UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RASHAD SALAAM,

                              Plaintiff,

   -against-                                        9:19-cv-00689 (AMN/TWD)

GORDON STOCK and TRAVIS M. ZEHR,

                              Defendants.
_____

**APPEARANCES:**                                         **OF COUNSEL:**

**RASHAD SALAAM**
14-A-3363
Clinton Correctional Facility
P.O. Box 2001
Dannemora, NY 12929
Plaintiff, *pro se*

**LETITICA JAMES**                                **STEVE NGUYEN, ESQ.**
Attorney General of the State of New York    Assistant Attorney General
The Capitol
Albany, NY 12224
Attorney for Defendant

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

      On May 30, 2019, plaintiff *pro se* Rashad Salaam ("Plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this action pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1. Plaintiff sought and was granted leave to proceed *in forma pauperis*. Dkt. Nos. 11 & 15. Plaintiff's fourth amended complaint ("FAC") was accepted for filing on August 11, 2021, in which Plaintiff alleged

Fourteenth Amendment equal protection and Eighth Amendment failure to protect claims against Corrections Officer ("CO") Gordon Stock and CO Travis Zehr (collectively, "Defendants"). *See* Dkt. No. 83. On July 20, 2022, Defendants filed a motion for summary judgment seeking dismissal of the FAC. *See* Dkt. No. 108. This matter was referred to United States Magistrate Judge Thérèse Wiley Dancks, who, on February 27, 2023, issued a Report-Recommendation and Order ("Report-Recommendation"), recommending that Defendants' motion for summary judgment, Dkt. No. 108, be granted in part and denied in part. *See* Dkt. No. 115 at 19. Magistrate Judge Dancks advised that under 28 U.S.C. § 636(b)(1), the parties had fourteen days within which to file written objections and that failure to object to the Report-Recommendation within fourteen days would preclude appellate review. *Id*. Plaintiff timely filed a response to the Report-Recommendation. Dkt. No. 116.

For the reasons stated herein, the Court adopts the recommendations in the Report-Recommendation.

## II. BACKGROUND[1]

Plaintiff alleges that he[2] was sexually assaulted on July 22, 2017, and physically assaulted on July 25, 2017, by another inmate, Jason Williams ("Williams"), while he was incarcerated at Auburn Correctional Facility ("Auburn C.F."). *See* Dkt. No. 83. According to Plaintiff, at approximately 7:30 a.m. on July 22, 2017, Williams entered Plaintiff's cell and sexually assaulted him for approximately three minutes while CO Stock was overlooking the gallery and opening the

---

[1] Plaintiff's factual allegations are detailed in the Report-Recommendation. *See* Dkt. No. 115 at 5-6.

[2] Because Plaintiff has alleged and testified that he no longer identifies as transgender, the Court will refer to Plaintiff as "he" or "him" herein.

cells for breakfast in Plaintiff's cell block.  Dkt. No. 83 at 3; Dkt. No. 108-4 at 22-23, 25.[3]  Plaintiff did not report the attack at the time because Williams threatened to kill him if he told anyone about the attack.  Dkt. No. 108-4 at 25-27.  Plaintiff contends that he would not have been assaulted if CO Stock had made his rounds on time or pulled a pin during the attack.  Dkt. No. 83 at 1.

Plaintiff alleges that he was physically assaulted on July 25, 2017, by Williams, when CO Zehr was opening cells for inmates after recreation at or around 10 p.m.  Dkt. No. 83 at 3-4; Dkt. No. 108-4 at 36.  According to Plaintiff, Williams came up behind him and cut his face with a razor.  Dkt. No. 108-4 at 35.  Plaintiff went back into his cell, but Williams followed him and cut Plaintiff's right arm before returning to his own cell.  Dkt. No. 108-4 at 35, 39-40.  Plaintiff contends that CO Zehr stood at the end of the gallery watching as Williams assaulted him.  Dkt. No. 83 at 3-4.  Plaintiff alleges that CO Zehr did not pull a pin or otherwise give attention to the situation.  *Id.*  Plaintiff also claims CO Zehr walked by his cell "smiling in a childish way" four to five minutes after the incident while Plaintiff was bleeding from his face and arm.  Dkt. No. 108-4 at 35-36, 40.  Plaintiff further alleges he had to call CO Zehr back and ask him to go to the infirmary.  Dkt. No. 108-4 at 35-36.  CO Zehr allegedly told Plaintiff to wait, completed his rounds, and then sent Plaintiff to the infirmary.  Dkt. No. 108-4 at 36.  Plaintiff still has scars on his face and arm from the incident.  Dkt. No. 108-4 at 46.

Plaintiff contends that he was "neglected" or "ignored" by CO Stock and CO Zehr because he previously identified as transgender and because he was convicted of murdering someone who was related to a CO.  Dkt. No. 83 at 3.  Plaintiff further contends that the fact that he previously identified as transgender and had a history of being sexually assaulted in other DOCCS facilities

---

[3] Citations to Court documents utilize the pagination generated by CM/ECF docketing system and not the documents' internal pagination.

had spread throughout his block and the prison.  Dkt. No. 83 at 2-3; Dkt. No. 108-4 at 48.  As a result, other inmates loudly taunted him, and thus the Auburn C.F. COs had knowledge of Plaintiff's background.  *See* Dkt. No. 83 at 2-3.

### III.   STANDARD OF REVIEW

#### A.  Summary Judgment

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff."  *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (emphasis in original).  In other words, "a nonmoving party must offer some hard evidence showing that [his] version of the events is not wholly fanciful."  *Id.* (citation and internal quotation marks omitted).  Moreover, the court "cannot try issues of fact; it can only determine whether there are issues to be tried."  *See Chambers*, F.3d at 36-37 (quotation and other citation omitted).  Any assessments of credibility and all choices between available inferences are matters to be left for a jury, not matters to be decided by the Court on summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (citing Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable factual inferences in favor of the

4

nonmoving party. *See Chambers*, 43 F.3d at 36 (citing, *inter alia*, *Anderson*, 477 U.S. at 255).[4] Where a party is proceeding *pro se*, like here, the court must "read his supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *accord Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). "However, a pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

### B. Review of Report-Recommendation

A district court reviews *de novo* those portions of a magistrate judge's report-recommendations that have been properly preserved with a specific objection. 28 U.S.C. § 636(b)(1)(C). "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.'" *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012) (alteration in original) (quoting N.D.N.Y. Local Rule 72.1(c)). When a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [previously] presented to the magistrate judge," the district court reviews a magistrate judge's report-recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322 (TJM)(DRH), 2011 WL 933846, at *1 (N.D.N.Y. Mar. 16, 2011) (citations omitted); *accord Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (a "statement, devoid of any reference to specific findings or recommendations to

---

[4] Where, as here, the non-movant fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n. 5 (2d Cir. 2003) (holding that not verifying in the record the assertions in a motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

5

which [the plaintiff] objected and why, and unsupported by legal authority, was not sufficient to preserve" a claim).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted). The Second Circuit has held that courts are obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). That said, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal . . .." *Machicote v. Ercole*, No. 06 Civ. 13320 (DAB)(JCF), 2011 WL 3809920, at *2, (S.D.N.Y. Aug. 25, 2011) (citation omitted); *accord Caldwell v. Petros*, No. 1:22-cv-567 (BKS/CFH), 2022 WL 16918287, at *1 (N.D.N.Y. Nov. 14, 2022). After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." 28 U.S.C. § 636(b)(1)(C).

**IV.   DISCUSSION**

Defendants did not file objections to the Report-Recommendation. In response to the Report-Recommendation, Plaintiff submitted a document docketed as an objection. Dkt. No. 116. However, Plaintiff's submission restates certain of the allegations in the FAC, *compare* Dkt. No. 116, *with* Dkt. No. 83, and does not reference the Report-Recommendation or identify any objection to the analysis in the Report-Recommendation.[5] Plaintiff has thus failed to preserve an

---

[5] Although it is titled "Written Objection," Plaintiff's document presents as more akin to a settlement demand than as an objection to the Report-Recommendation. *See* Dkt. No. 116. Instead of the $100,000 in monetary damages initially sought, Plaintiff states that he now seeks $5,000 in

objection.  Therefore, the Court reviews the Report-Recommendation for clear error.

### A.  Plaintiff's Equal Protection Claim

Magistrate Judge Dancks recommended that Plaintiff's Fourteenth Amendment equal protection claim against Defendants be dismissed.  Dkt. No. 115 at 19.  For the reasons stated below, the Court adopts Magistrate Judge Dancks' recommendation.

#### i.  Legal Standard

"The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated in the same manner."  *Allen v. Cuomo*, 100 F.3d 253, 260 (2d Cir. 1996) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  "To prove an equal protection violation, claimants must prove purposeful discrimination, directed at an identifiable or suspect class."  *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted).  Where there are no allegations of membership in a suspect or protected class, the plaintiff may still prevail on an equal protection claim under either a selective enforcement or a class of one theory.[6]  *See Cobb v. Pozzi,* 363 F.3d 89, 109-11 (2d Cir. 2004); *Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 433 (S.D.N.Y. 2013); *see also Emblen v. Port Authority of New York/New Jersey*, No. 00 Civ. 8877 (AGS), 2002 WL 498634, at *7 (S.D.N.Y. Mar. 29, 2002) (allowing plaintiff's equal protection claim under the class of one theory to proceed where the plaintiff was not homosexual but alleged that he was perceived and discriminated against as such) (citing *Harlen Assocs. v. Incorporated Village of Mineola,* 273 F.3d 494, 499 (2d Cir.

---

monetary damages to resolve his Eighth Amendment failure to protect claim against CO Zehr.  *See id.*

[6] The Second Circuit treats claims under the selective enforcement theory and the class of one theory as separate claims.  *See Casciani v. Nesbitt*, 392 F. App'x. 887, 888 (2d Cir. 2010) (summary order); *Gentile v. Nulty*, 769 F. Supp. 2d 573, 579 (S.D.N.Y. 2011) (noting that courts in the Second Circuit "have generally treated selective enforcement and class of one theories as distinct theories with distinct elements of proof." (citations and internal quotation marks omitted)).

2001)).

To state a claim under the selective enforcement theory, "a plaintiff must allege facts supporting a conclusion that 1) he was 'treated differently from other similarly situated' comparators, and 2) 'that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Missere v. Gross*, 826 F. Supp. 2d 542, 560 (S.D.N.Y. 2011) (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007) (internal quotation marks omitted)). Finally, a plaintiff can state an equal protection claim under the "class of one" theory by alleging that he has been intentionally and "irrationally singled out." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). A plausible class of one claim requires the plaintiff to demonstrate an "extremely high degree of similarity" with the person to whom he is comparing himself to. *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (citation and internal quotation marks omitted).

### ii. Application

Plaintiff contends that his Fourteenth Amendment rights were violated on two separate occasions by two different DOCCS corrections officers.[7] *See* Dkt. No. 83. Plaintiff alleges that CO Stock violated his Fourteenth Amendment rights when he failed to protect him from being sexually assaulted by Williams on July 22, 2017. *Id.* at 1. Plaintiff also alleges that CO Zehr failed to protect him from being physically assaulted by Williams on July 25, 2017. *Id.* at 3-4. Plaintiff contends that Defendants failed to protect him from being assaulted for two reasons: (1) because

---

[7] Plaintiff uses the words "neglected" and "ignored" to describe the basis for his equal protection claim against Defendants. Dkt. No. 83 at 3. Construing Plaintiff's submissions and arguments liberally, the Court understands Plaintiff to be alleging that Defendants failed to protect him from being sexually and physically assaulted by Williams.

he was convicted of murdering someone related to a CO; and (2) because he previously identified as transgender. *Id.* at 3.

### 1. CO Stock

As an initial matter, Plaintiff has no legally cognizable claim under the Fourteenth Amendment against CO Stock. It is undisputed that CO Stock was not physically present for, involved in, or a witness to Plaintiff's alleged sexual assault by Williams on July 22, 2017. *See* Dkt. No. 108-2 at 2-3; Dkt. No. 108-4 at 27-28. The summary judgment record, including Plaintiff's testimony, demonstrates that CO Stock was not present at the time the sexual assault occurred.[8] *Id.* Therefore, the evidence before the Court fails to establish that CO Stock treated Plaintiff differently than those similarly situated—he simply was not present in Plaintiff's cell block at the time of the alleged assault and thus could not have engaged in any treatment of Plaintiff whatsoever with respect to the alleged assault. *Id.* Therefore, the Court adopts Magistrate Judge Dancks' recommendation that Plaintiff's equal protection claim against CO Stock be dismissed.

### 2. CO Zehr

The Court also adopts Magistrate Judge Dancks' recommendation that Plaintiff's equal protection claim against CO Zehr be dismissed. Magistrate Judge Dancks correctly found that Plaintiff's equal protection claim against CO Zehr fails as a matter of law. *See* Dkt. No. 115 at 7-10.

The Court will first address whether Plaintiff is a member of an identifiable or suspect

---

[8] Plaintiff alleges that he was sexually assaulted by Williams because CO Stock failed to pull a pin and/or failed to timely complete his rounds. Dkt. No. 83 at 1. Plaintiff's allegations are refuted by the summary judgment record. First, CO Stock could not have pulled a pin because he was not present—and was not supposed to be present—on Plaintiff's cell block at the time the alleged assault occurred, and second, CO Stock performed his duties consistent with his established schedule. *See* Dkt. No. 108-2 at 2-3; Dkt. No. 108-4 at 27-28.

class.  Plaintiff alleges two different bases for his equal protection claim, which the Court will analyze separately.  Beginning with Plaintiff's contention that CO Zehr failed to protect him because he was convicted of murdering someone related to a corrections officer—Plaintiff is not a member of a suspect class because he was convicted of murdering someone related to a corrections officer.  *See Lee v. Governor of State of N.Y.*, 87 F.3d 55, 60 (2d Cir. 1996) ("prisoners either in the aggregate or specified by offense are not a suspect class"); *Mathie v. Dennison*, No. 06 CIV. 3184 (GEL), 2007 WL 2351072, at *8 (S.D.N.Y. Aug. 16, 2007), *aff'd*, 381 F. App'x 26 (2d Cir. 2010) ("Prisoners are not a suspect class . . .. Nor are violent prisoners a suspect class.  A history of violent crime is the very opposite of a morally irrelevant, immutable trait: it reflects a voluntary choice by the offender to commit a dangerous and harmful criminal act when he could have complied with the law."); *Scott v. Dennison*, 739 F. Supp. 2d 342, 362 (W.D.N.Y. 2010) ("neither violent felons nor non-violent felons are a 'suspect class' under the United States Constitution").

The Court next addresses Plaintiff's contention that CO Zehr failed to protect him because he previously identified as transgender.  Defendants argue that Plaintiff is not a member of a suspect class because Plaintiff did not identify as transgender at the time the alleged assaults occurred.  *See* Dkt. No. 108-5 at 12-13.  Defendants also argue that even if Plaintiff was transgender at the time the alleged assaults occurred, Plaintiff would not be entitled to heightened scrutiny because there is no Supreme Court or Second Circuit case addressing whether transgender individuals are members of a protected or suspect class.  *See id.* at 12.

First, Defendants are correct that Plaintiff is not a member of a protected or suspect class because he previously identified as transgender.  Plaintiff testified that he was born a male and currently identifies as male.  Dkt. No. 108-4 at 18.  Plaintiff also testified that he identified as

10

transgender from 2009 to 2011 but ceased to do so when he was incarcerated in 2011. *Id.* at 19. Thus, for purposes of resolving CO Zehr's motion for summary judgment as to Plaintiff's equal protection claim, the Court need not determine whether transgender persons are members of a protected or suspect class because Plaintiff in this action does not currently identify as transgender.[9]

However, the Court notes that Defendants are correct in that neither the Supreme Court nor the Second Circuit has provided guidance on this point. Moreover, there is a lack of uniformity among the district courts in this Circuit that have addressed the question of whether transgender plaintiffs are members of a protected class whose equal protection claims are entitled to heightened scrutiny. *Compare Adkins v. City of New York*, 143 F. Supp. 3d 134, 139 (S.D.N.Y. 2016) (concluding that transgender persons are a quasi-suspect class and are thus entitled to intermediate scrutiny) *with White v. City of New York*, 206 F. Supp. 3d 920, 933 (S.D.N.Y. 2016) (concluding that neither the Supreme Court nor the Second Circuit has held that transgender persons are members of a protected or suspect class whose claims are entitled to heightened scrutiny). The *Adkins* court relied on the four-factor test set forth in *Windsor v. United States*, 699 F.3d 169 (2d Cir. 2012), in which the Second Circuit held that homosexual persons are a quasi-suspect class and are entitled to intermediate scrutiny. 143 F. Supp. 3d at 139-140. The *Adkins* court acknowledged that although transgender individuals and homosexual individuals are not identical, they are "similarly situated with respect to each of *Windsor's* four factors[,]" because transgender individuals have "suffered a history of persecution and discrimination," "transgender status bears no relation to the ability to contribute to society," "transgender status is a sufficiently discernable

---

[9] The Court notes that Plaintiff need not be a member of a protected or suspect class to proceed with an equal protection claim under a selective enforcement or class of one theory. The Court assesses the sufficiency of such claims *infra*.

11

characteristic to define a discrete minority class," and "transgender people are a politically powerless minority."[10] *Id.* at 139. Thus, the *Adkins* court held that *Windsor* clearly established equal protection rights for not only homosexual individuals, but also transgender individuals. *Id.* at 139-140; *see also Johnson v. Padin*, No. 3:20-CV-637 (CSH), 2020 WL 4818363, at *3 (D. Conn. Aug. 16, 2020). By contrast, in *White*, which was decided approximately a month later than *Adkins*, the court declined to extend the holding in *Windsor* to transgender plaintiffs. *White*, 206 F. Supp. 3d at 933 ("While there is certainly an argument to be made that the *Windsor* holding should be expanded to transgender persons . . . it [is] not the clearly established law of this Circuit . . ."); *see Shtilman v. Makram*, No. 14-CV-6589 (NSR), 2018 WL 3745670, at *7 (S.D.N.Y. Aug. 6, 2018) (stating that neither the Supreme Court nor the Second Circuit has held that transgender individuals are members of a protected class).

Even assuming *arguendo* that Plaintiff still identified as transgender at the time of the alleged assaults and adequately alleged intentional or purposeful discrimination on the part of CO Zehr, Plaintiff's equal protection claim against CO Zehr would be dismissed because CO Zehr is entitled to qualified immunity. Qualified immunity shields government officials from liability for money damages for violation of a right under federal law if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It allows government officials to make reasonable judgments and is said to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Qualified immunity bars a plaintiff's claim

---

[10] Although *Adkins* found that the plaintiff established a violation of the Fourteenth Amendment, the court granted the individual defendants' motion to dismiss because qualified immunity applied. *Adkins*, 143 F. Supp. 3d at 140. The court held that qualified immunity applied because plaintiff's rights were not clearly established at the time of his arrest, which occurred a year prior to the decision in *Windsor v. United States*. *Id.*

unless (1) the official violated a statutory or constitutional right, and (2) that right was clearly established at the time of the challenged conduct." *Matzell v. Annucci*, 64 F.4th 425, 434 (2d Cir. 2023) (citing *Francis v. Fiacco*, 942 F.3d 126, 139 (2d Cir. 2019)). A right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011). "To determine whether a law is clearly established, this Court considers 'the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law.'" *Matzell*, 64 F.4th at 434 (quoting *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014)). Because it was not (and still is not) the clearly established law of this Circuit that transgender plaintiffs are members of a protected or suspect class whose equal protection claims are entitled to heightened scrutiny, CO Zehr "could not be expected to anticipate that [his] actions would be subject to any standard more stringent than rational basis review," *see White*, 206 F. Supp. 3d at 933, and is therefore entitled to qualified immunity on Plaintiff's equal protection claim. *See id.* (holding that qualified immunity applied to the individual defendants because plaintiff's rights were not clearly established at the time of the alleged discrimination occurred); *Adkins*, 143 F. Supp. 3d at 140 (same).

The Court next considers whether Plaintiff has alleged a cognizable equal protection claim under either a selective enforcement or a class of one theory. The Court finds that Plaintiff has failed to do so. Plaintiff's claim under these theories fails because he does not allege any facts from which the Court can discern that he was treated differently from similarly situated inmates. *See Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011) ("There are two types of equal protection claims that require similarly situated comparators

. . . selective enforcement or selective treatment claims . . . [and] 'class of one' claims . . ."); *see also Ruggiero v. Fischer*, 807 F. App'x 70, 74 (2d Cir. 2020) ("[C]lass-of-one plaintiffs must show an extremely high degree of similarly between themselves and persons to whom they compare themselves.") (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)). Plaintiff only alleges that he was "ignored" and "neglected" by CO Zehr because he previously identified as transgender and/or because he was convicted of murdering someone related to a CO. Dkt. No. 83 at 3. He identifies no comparators. *See generally* Dkt. No. 83. These factual allegations are insufficient to demonstrate disparate treatment from those similarly situated, even with recognition of Plaintiff's *pro se* status. Accordingly, the Court adopts Magistrate Judge Dancks' recommendation that Defendants' motion for summary judgment be granted as to Plaintiff's Fourteenth Amendment equal protection claim against CO Zehr.

### B. Plaintiff's Failure to Protect Claim

Magistrate Judge Dancks recommended that Plaintiff's Eighth Amendment failure to protect claim against CO Stock be dismissed, but that Plaintiff's Eighth Amendment failure to protect claim against CO Zehr proceed to trial. Dkt. No. 115 at 19. For the reasons stated below, the Court adopts these recommendations.

To prevail on a failure to protect claim, a plaintiff must demonstrate two elements, one that is subjective, and one that is objective. *See Farmer v. Brennan*, 511 U.S. 825, 828-34 (1994). To satisfy the objective prong, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. at 834. To satisfy the subjective prong, the plaintiff must prove deliberate indifference on the part of the official. *See Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer*, 511 U.S. at 833). That is, "the plaintiff must show that the 'official [knew] of and disregard[ed] an excessive risk to inmate health or safety.'"

*Celestin v. Premo*, No. 9:12-cv-301 (GLS/RFT), 2014 WL 272443, at *5 (N.D.N.Y. Jan. 24, 2014) (quoting *Farmer*, 511 U.S. at 836) (alterations in original).  Moreover, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference."  *Id.* (emphasis in original).  Mere negligence by a prison official will be insufficient to establish deliberate indifference.  *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) ("Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm.").

Magistrate Judge Dancks correctly concluded that Plaintiff cannot satisfy the elements of a failure to protect claim against CO Stock.  *See* Dkt. No. 115 at 12-14.  As a threshold matter, Plaintiff's failure to protect claim against CO Stock fails for the same reason his equal protection claim against CO Stock fails.  As discussed in Section IV.A.ii.1 *supra*, there is simply no evidence that CO Stock was on Plaintiff's cell block at the time Plaintiff alleges the sexual assault occurred.  *See* Dkt. No. 108-2 at 2-3; Dkt. No. 108-4 at 28.  As such, CO Stock could not have prevented Williams from allegedly sexually assaulting Plaintiff on July 22, 2017.  Moreover, Plaintiff has not adequately alleged that CO Stock was aware prior to (or at the time of) the sexual assault that Plaintiff previously identified as transgender and that he had been sexually assaulted at previous DOCCS facilities, such that there was a substantial risk of serious harm to Plaintiff to which CO Stock was deliberately indifferent.[11]  In sum, Plaintiff has failed to allege facts sufficient to establish a failure to protect claim against CO Stock.  Accordingly, the Court adopts Magistrate

---

[11] In the FAC, Plaintiff simply refers to "he" in the sentences in which he describes his bases for why he believes that the COs "allowed" him to be assaulted by Williams.  *See* Dkt. No. 83 at 2 ("*He* overheard inmates from the other tiers harassing me about my sexuality and everything else.  *He* knew this were (sic) an ongoing issue of mine, where I have been raped on several occasions at other facilities." (emphasis added)).  Even with recognition of Plaintiff's *pro se* status and the solicitude afforded therewith, the Court cannot speculate as to who "he" is—"he" could be CO Stock, CO Zehr, or some unnamed CO.  *See also* Dkt. 115 at 13-14.

15

Judge Dancks' recommendation that Defendants' motion for summary judgment as to Plaintiff's Eighth Amendment failure to protect claim against CO Stock be granted.

In addition, Magistrate Judge Dancks correctly concluded that Plaintiff's Eighth Amendment failure to protect claim against CO Zehr should proceed to trial because a reasonable jury could find that CO Zehr was deliberately indifferent to an excessive risk to inmate health and safety when he failed to intervene at the time that he saw Williams "making violent swinging motions" inside Plaintiff's cell during the alleged assault on July 25, 2017. Dkt. No. 115 at 15 (citing Dkt. No. 108-3 at 20). The Court adopts Magistrate Judge Dancks' recommendation that Defendants' motion for summary judgment be denied as to Plaintiff's Eighth Amendment failure to protect claim against CO Zehr. *See*, *e.g.*, *Heisler v. Kralik*, 981 F. Supp. 830, 837 (S.D.N.Y. 1997), *aff'd sub nom. Heisler v. Rockland Cnty.*, 164 F.3d 618 (2d Cir. 1998) (denying defendant's motion for summary judgment where the plaintiff alleged that another inmate, whom plaintiff had no alleged previous altercations with, attacked him while he was being held as a pretrial detainee, and officers witnessed the assault but failed to intercede to stop it); *Stewart v. Schiro*, No. 13-CV-3613 (NGG)(VMS), 2015 WL 1854198, at *8 (E.D.N.Y. Apr. 22, 2015) ("under certain circumstances, the commencement of an inmate-to-inmate altercation could put a prison official on sufficient notice to render the prison official deliberately indifferent if he or she then fails to intervene in an appropriate manner"); *Candelaria v. Coughlin*, No. 91 Civ. 2978, 1996 WL 88555, at *9 (S.D.N.Y. Mar. 1, 1996) (inaction by a correction officer to intercede and halt an attack by a fellow prisoner is sufficient basis for deliberate indifference). Additionally, the Court agrees with Magistrate Judge Dancks' finding that CO Zehr is not entitled to qualified immunity, *see* Dkt. No. 115 at 18, because Plaintiff has raised a question of fact with respect to this claim. *See, e.g., Decayette v. Goord*, No. 9:06-CV-783, 2009 WL 1606753, at *12 (N.D.N.Y. June 8, 2009)

(finding defendant was not entitled to summary judgment on qualified immunity grounds because triable issues of fact existed as to whether she was deliberately indifferent to a serious medical need of Plaintiff's and as to whether she was liable for failing to intervene during the alleged beating of Plaintiff).

Having reviewed the Report-Recommendation for clear error, and found none, the Court adopts the recommendations in the Report-Recommendation.

## V.   CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the recommendations in the Report-Recommendation, Dkt. No. 115, are **ADOPTED** for the reasons stated herein; and the Court further

**ORDERS** that Defendants' motion for summary judgment, Dkt. No. 108, is **GRANTED** in part and **DENIED** in part.  The motion is granted in that the following claims are **DISMISSED**: the Fourteenth Amendment equal protection claim against both Defendants and the Eighth Amendment failure to protect claim against Defendant CO Stock.  The motion is **DENIED** as to the Eighth Amendment failure to protect claim against Defendant CO Zehr; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   May 22, 2023
         Albany, New York

*Anne M. Nardacci*
Anne M. Nardacci
U.S. District Judge