**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

RASHAD SALAAM,

                Plaintiff,

     v.                                     9:19-cv-00689 (AMN/TWD)

TRAVIS ZEHR,

                Defendant.

---

| APPEARANCES: | OF COUNSEL: |
| --- | --- |
| **ARNOLD & PORTER KAYE SCHOLER LLP** | **MAYA KOUASSI, ESQ.** |
| 250 West 55th Street | **MOLLY MCGRATH, ESQ.** |
| New York, NY 10019-9710 | **ANGELA VICARI, ESQ.** |
| *Attorneys for Plaintiff* | **ERIC WHITNEY, ESQ.** |
| | |
| **LETITIA JAMES** | **ANTHONY R. HUNTLEY, ESQ.** |
| Attorney General of the State of New York | **ERIN P. MEAD, ESQ.** |
| The Capitol | Assistant Attorneys General |
| Albany, NY 12224 | |
| *Attorney for Defendant* | |

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

On May 30, 2019, plaintiff *pro se* Rashad Salaam ("Plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this action pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1. Plaintiff's fourth amended complaint ("FAC") was accepted for filing on August 11, 2021. *See* Dkt. No. 83. Plaintiff's sole remaining claim alleges that Defendant Travis Zehr ("Defendant") failed to protect Plaintiff in violation of the Eighth Amendment while he was incarcerated at Auburn Correctional Facility ("Auburn") during an incident which occurred on July 25, 2017. *See* Dkt. No. 117 at 17. On

September 28, 2023, the undersigned ordered that a jury trial commence on January 29, 2024.  Dkt.

No. 132 at 1.[1]

  On October 23, 2023, Defendant filed a Letter Motion requesting that the Court conduct

an exhaustion hearing prior to trial.  Dkt. No. 137.   The Court referred the matter to United States

Magistrate Judge Thérèse Wiley Dancks to conduct an exhaustion hearing pursuant to *Messa v.*

*Goord*, 652 F.3d 305 (2d Cir. 2011).  An exhaustion hearing was conducted on February 16, 2024,

during which Plaintiff was represented by *pro bono* counsel.  Dkt. No. 157.[2]  On April 19, 2024,

Magistrate   Judge   Dancks   issued   a   Report-Recommendation   and   Order   ("Report-

Recommendation") recommending that the Court find that Plaintiff has failed to exhaust available

administrative remedies with respect to the July 25, 2017 incident, and that Plaintiff's FAC be

dismissed.  Dkt. No. 161.  Plaintiff timely filed objections to the Report-Recommendation.  Dkt.

No. 162.[3]

  For the reasons set forth below, the Report-Recommendation is adopted in its entirety.

## II. STANDARD OF REVIEW

  This Court reviews *de novo* those portions of a magistrate judge's report-recommendation

that have been properly preserved with a specific objection.  28 U.S.C. § 636(b)(1)(C).  "To be

'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings,

---

[1] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system.
[2] During the exhaustion hearing, Defendant called four witnesses: Rachel Seguin, Cheryl Parmiter, Zachary Meek, and Misty O'Dell.  *See* Dkt. No. 157.   At the relevant time, Seguin was the Assistant Director of the DOCCS Incarcerated Grievance Program ("IGP"), Parmiter was the IGP supervisor at Auburn, Meek was a Correction Sergeant at Auburn, and O'Dell was the IGP supervisor at Elmira Correctional Facility ("Elmira").  Dkt. No. 161 at 4-9 (citing Dkt. No. 157 at 10-11, 37-38, 62, 82).
[3] For a recitation of the factual and procedural history of this action, the parties are referred to the Report-Recommendation.  *See* Dkt. No. 161 at 1-4.

recommendations, or report to which it has an objection and [2] the basis for the objection.'" *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012) (alteration in original) (quoting N.D.N.Y. Local Rule 72.1(c)). If no specific objections have been filed, this Court reviews a magistrate judge's report-recommendation for clear error. *See id*. at 229 (citing Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition). Similarly, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [previously] presented to the magistrate judge," the district court reviews a magistrate judge's report-recommendation for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322 (TJM) (DRH), 2011 WL 933846, at *1 (N.D.N.Y. Mar. 16, 2011) (citations omitted); *accord Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (a "statement, devoid of any reference to specific findings or recommendations to which [the plaintiff] objected and why, and unsupported by legal authority, was not sufficient to preserve" a claim); *Petersen*, 2 F. Supp. 3d at 228-29 & n.6 (collecting cases). "When performing [ ] a 'clear error' review, 'the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Dezarea W. v. Comm'r of Soc. Sec.*, No. 6:21-CV-01138 (MAD/TWD), 2023 WL 2552452, at *1 (N.D.N.Y. Mar. 17, 2023) (quoting *Canady v. Comm'r of Soc. Sec.*, No. 1:17-CV-0367 (GTS/WBC), 2017 WL 5484663, at *1 n.1 (N.D.N.Y. Nov. 14, 2017)).

## III.   DISCUSSION

### A.   Objections to the Report-Recommendation

Plaintiff has not raised any objections to the facts or the legal framework set forth in the Report-Recommendation. *See generally* Dkt. No. 162. Therefore, the Court adopts Magistrate Judge Danck's summary of the factual background and applicable law and presumes familiarity with those matters for the purposes of this decision. *See* Dkt. No. 161.

3

### 1. Inconsistencies in Defendant's Witnesses' Testimony

Magistrate Judge Dancks found "the testimony of the Defendant['s] witnesses that the IGP was available to Plaintiff while he was housed at both Auburn and Elmira [was credible]" and "Plaintiff's testimony concerning his alleged attempts to submit grievances concerning the July 25, 2017, incident was not credible." Dkt. No. 161 at 17-18. The Report-Recommendation evaluated Plaintiff's testimony and the testimony of each of Defendant's four witnesses in making this determination. *Id.* at 17-21. Plaintiff objects to this finding, contending that Magistrate Judge Dancks failed "to consider the material inconsistencies in Defendant's witnesses' testimonies, along with the gaps in their knowledge, which demonstrate that the IGP was not available to Plaintiff." Dkt. No. 162 at 3.

As to Parmiter, the IGP Supervisor at Auburn, Plaintiff argues that her testimony "demonstrate[s] a material gap of knowledge regarding both the procedures and availability of the IGP." *Id.* at 4. Plaintiff cites the following examples: (1) Parmiter was unable to provide a specific answer as to how she knew whether the IGP was "available to all incarcerated individuals"; (2) Parmiter did not know how grievances from individuals located in the Special Housing Unit "make[ ] [their] way to her desk"; and (3) Parmiter "did not know the procedures for submitting grievances while in the infirmary or mental health units at Auburn . . . [or] whether incarcerated individuals had the ability to file grievances directly in a mailbox, directly with an officer, or otherwise." Dkt. No. 162 at 4-5 (citing Dkt. No. 157 at 39, 41, 53). Plaintiff further points out that Parmiter testified that "she made rounds of the protective custody units 'per the Directive 4040' even though Directive 4040 makes no mention of protective custody specifically, or the availability of the IGP to incarcerated individuals while they are located in protective custody." *Id.* (citing Dkt. No. 157 at 38, 41).

As to Seguin, the Assistant Director of the IGP for DOCCS, Plaintiff cites her testimony that while all facility grievance offices are required to make rounds "in protective custody units and similarly limited areas," Seguin admitted that during site visits, she and her team often don't "go into protective custody to do a round." *Id.* at 5 (citing Dkt. No. 157 at 15-16, 29-30). Plaintiff argues that this demonstrates that Seguin is unable to substantiate her claim that "the IGP was available at every DOCCS facility," including at Auburn in 2017. *Id.* Finally, as to O'Dell, the IGP Supervisor at Elmira, Plaintiff argues that her testimony fails to demonstrate that the IGP was available to Plaintiff at Elmira because "she did not even know how, or if, grievances submitted through intrafacility mail arrived at the Elmira IGP office." *Id.* at 6 (citing Dkt. No. 157 at 84).

"The Court had the unique ability to observe the witnesses and evaluate their credibility during the exhaustion hearing." *See Brown v. Dubo*is, No. 9:15-CV-1515 (LEK) (CFH), 2018 WL 2078823, at *5 (N.D.N.Y. Apr. 10, 2018), *report and recommendation adopted*, 2018 WL 2077891 (N.D.N.Y. May 2, 2018). The determination as to whether a plaintiff exhausts his or her administrative remedies "require[s] an evaluation of the plaintiff's credibility versus the persuasiveness of the defendant['s] testimony about the integrity of the grievance process and the record keeping of the IGP at [the correctional facility]." *McLean v. Harris*, No. 9:19-CV-1227 (BKS) (ATB), 2022 WL 1129811, at *8 (N.D.N.Y. Feb. 9, 2022), *report and recommendation adopted*, 2022 WL 909159 (N.D.N.Y. Mar. 29, 2022).

Upon *de novo* review, the Court does not find a basis for rejecting Magistrate Judge Danck's credibility determinations as to Defendant's witnesses' testimony. Magistrate Judge Dancks noted that courts have found the testimony of defense witnesses credible where their testimony establishes that the correctional facility's grievance process was "sufficiently reliable" and the IGP in place complies with Directive 4040. Dkt. No. 161 at 17-18 (citing *McLean*, 2022

WL 1129811, at *10 (finding defense witnesses testimony credible to establish "that the grievance process at [the correctional facility] . . . was sufficiently reliable that all three submissions plaintiff purportedly made to the IGP . . . would not have been lost or diverted") and *Brown*, 2018 WL 2078823, at *5 (finding "credible the testimony of defendants' witnesses that in July 2014 there was an inmate grievance program in place at [the correctional facility] which complied with Directive 4040")); *see also Hudson v. Kirkey,* No. 9:20-CV-581 (LEK) (DJS)*,* 2023 WL 8360642, at *5 (N.D.N.Y. Sept. 11, 2023) (finding that the testimony from the defense witnesses was "forthright, credible, and consistent with the available records" by establishing "that there was in fact a working inmate grievance procedure available to Plaintiff in 2019 at the [relevant correctional facilities]"), *report and recommendation adopted*, 2023 WL 8270374 (N.D.N.Y. Nov. 29, 2023).

Here, Magistrate Judge Dancks noted the relevant testimony that established the reliability of the IGP process at Auburn and Elmira. The witnesses testified that the IGP process contained in Directive 4040 was in place at Elmira and Auburn during the relevant time, including to incarcerated individuals in protective custody and individuals in the infirmary at Auburn. *See* Dkt. No. 161 at 4-9 (citing Dkt. No. 157 at 13-17, 37-41, 49-50, 59, 65-72, 82-84); *see also* Dkt. No. 157 at 70 (Meek testifying that he did not have "any recollection [at Auburn in 2017] of there being any complaints about mail or grievances made by inmates or incarcerated individuals in the Protective Custody Unit not being received in the IGP office").[4]  Seguin also testified that if an incarcerated individual "does not hear back after filing a grievance . . . [the individual can] speak

---

[4] Plaintiff has not raised any objection as to Meek's testimony. *See generally* Dkt. No. 162. Therefore, the portions of the Report-Recommendation which address Meek's testimony are reviewed for clear error.

with the grievance supervisor to inquire about the status of the grievance." *Id.* at 5 (citing Dkt. No. 157 at 17).

Magistrate Judge Dancks also found that Defendant's witnesses had presented credible testimony that Plaintiff failed to file or appeal any grievances concerning the July 25, 2017 incident. Dkt. No. 161 at 5-9. Courts have held that a plaintiff failed to exhaust administrative remedies where the defendant demonstrates that there was no record of a plaintiff submitting a grievance. *See, e.g.*, *McLean,* 2022 WL 1129811, at *9 (finding defense witnesses credible and noting that they "relied primarily on the fact that none of the three documents plaintiff claimed to submit were found in the files of the [correctional facility's] IGP"); *Engles v. Jones,* No. 6:13-CV-6461 (EAW), 2018 WL 6832085, at *10 (W.D.N.Y. Dec. 28, 2018) (holding that plaintiff failed to exhaust administrative remedies where defendants "demonstrated through admissible evidence that there [wa]s no record of [p]laintiff having grieved his . . . claim"); *Anderson v. Spizziota,* No. 11-CV-5663 (SJF) (SIL), 2016 WL 11480707, at *17 (E.D.N.Y. Feb. 12, 2016) ("Where a plaintiff provides no evidence that a grievance was actually filed while defendant supplies evidence of searches of files and databases that failed to turn up that grievance, plaintiff's allegations are insufficient to satisfy the exhaustion requirement."), *report and recommendation adopted sub nom. Anderson v. Sposato*, 2016 WL 1275044 (E.D.N.Y. Mar. 31, 2016); *Curry v. Mazzuca*, No. 05 Civ. 1542, 2006 WL 250487, at *7 (S.D.N.Y. Feb. 2, 2006) (finding no evidence that a grievance was filed where defendants submitted evidence of file and database searches at the correctional facilities "failed to turn up any record" of the grievance).

Magistrate Judge Dancks noted that Seguin testified that when she conducted a search for Plaintiff's department identification number ("DIN") in the computer database at the Central Office Review Committee ("CORC"), her search found "there were no active grievance appeals

on file at CORC" and "no closed appeals" for Plaintiff's DIN.  Dkt. No. 161 at 5-6 (citing Dkt. No. 157 at 20-26, 29-31).[5]  Additionally, Parmiter testified that when she conducted a search of the IGP office database in 2020 at Auburn, she determined that Plaintiff did not file a grievance. *Id.* at 6-7 (citing Dkt. No. 157 at 44-45).  Additionally, O'Dell testified that her search of the computer database in late 2023 or early 2024 at Elmira using Plaintiff's DIN, "revealed he filed no grievances which were logged, no grievances which were rejected as untimely, nor did he request permission to file a late grievance arguing mitigating circumstances." *Id.* at 9 (citing Dkt. No. 157 at 93-94).

### 2. Whether Plaintiff's Inconsistencies Were Material

In determining that Plaintiff's testimony regarding his "alleged attempts to submit grievances concerning the July 25, 2017 incident was not credible," Magistrate Judge Dancks found that "either in his filings and deposition or in his hearing testimony, Plaintiff made a material misrepresentation to this Court about his submission of grievances, undermining the veracity of his contentions."  Dkt. No. 161 at 18-20.  Magistrate Judge Dancks noted that courts have found that a plaintiff was not credible when there were inconsistencies regarding a plaintiff's submission of grievances in the plaintiff's testimony and submissions to the court.  *Id.* at 20-21 (citing, *inter alia*, *Adams v. O'Hara*, 9:16-CV-0527 (GTS) (ATB), 2019 WL 652409, at *5 (N.D.N.Y. Feb. 15, 2019); *McLean*, 2022 WL 1129811, at *4, *9; *Smith v. Huggler*, No. 9:20-CV-1435 (GTS/CFH), 2023 WL 5097870, at *6 (N.D.N.Y. Aug. 9, 2023)); *see also Armand v. Mosko*, No. 13-CV-5 (LJV) (MJR) 2019 WL 2374948, at *4-5 (W.D.N.Y. Apr. 9, 2019) (finding plaintiff's testimony was not credible when the plaintiff provided three conflicting stories explaining why there was no

---

[5] Plaintiff testified that while he did not receive a response from Auburn or Elmira concerning the three grievances he allegedly filed, he did not file any appeals.  Dkt. No. 157 at 123.

record of a grievance, and the plaintiff had written a letter admitting she never tried to file one at all), *report and recommendation adopted*, 2019 WL 2374001 (W.D.N.Y. June 4, 2019).

Plaintiff objects that the Report-Recommendation incorrectly relies on *Adams*, 2019 WL 652409, because "[t]he inconsistencies in *Adams* were far more material [and] Plaintiff's inconsistencies were immaterial as they related solely to whether he submitted *three* or *four* grievances." Dkt. No. 162 at 6-8 (emphasis in original). Upon *de novo* review, the Court does not find a basis for rejecting Magistrate Judge Danck's determination that Plaintiff's testimony as to his alleged attempts to submit grievances was not credible. *See* Dkt. No. 161 at 18-21.

Here, Magistrate Judge Dancks provided substantial detail as to how Plaintiff's hearing testimony conflicted with his deposition testimony and court filings. Dkt. No. 161 at 18-21 (citing, *inter alia*, Dkt. No. 56-1 at 1; Dkt. No. 73 at 1; Dkt. No. 83 at 4; Dkt. No. 108-4 at 29, 31; Dkt. No. 157 at 104, 119, 122-23, 133). Additionally, Magistrate Judge Dancks noted that while Plaintiff testified that he knew about the IGP process, he "presented no testimony or evidence indicating he ever questioned or sought assistance from the Auburn or Elmira IGP offices or corrections staff regarding the three grievances he claimed to have filed after he received no response." Dkt. No. 161 at 21 (citing Dkt. No. 157 at 129; *Smith*, 2023 WL 5097870, at *6 (noting "the lack of any testimony or record evidence that . . . [p]laintiff ever questioned, or complained orally to, any of the individuals who made rounds in . . . [the unit where he was housed] regarding the processing of his purported grievance" in support of the court's conclusion that the plaintiff never placed a grievance to be collected)).

### 3. Correction Officers Thwarting Plaintiff's Attempt to File Grievances

Finally, Plaintiff objects to the conclusion in the Report-Recommendation that "Plaintiff's claim that correction officers at Auburn thwarted his attempts to file grievances is 'baseless'

because of the alleged 'absence' of deposition testimony and other evidence corroborating Plaintiff's claim, even though Plaintiff testified that he felt afraid and helpless." Dkt. No. 162 at 8 (citing Dkt. No. 161 at 23).

Upon *de novo* review, the Court does not find a basis to reject Magistrate Judge Dancks' finding that the grievance process was available to Plaintiff. Magistrate Judge Dancks noted that even though "Plaintiff argue[d] he felt 'intimidated' by the lieutenant and officers and was therefore unable to submit grievances at Auburn . . . [Plaintiff asserted that he] 'put in two grievances anyway.'" Dkt. No. 161 at 23 (quoting Dkt. No. 56-1 at 1). Magistrate Judge Dancks also noted that "even assuming, *arguendo*, Plaintiff's grievance at Auburn was thwarted, there is nothing in the record to explain why the grievances Plaintiff claimed to have filed at Elmira were never received." *Id.*; *see also Davis v. Grant*, No. 15-CV-5359 (KMK), 2019 WL 498277, at *9 (S.D.N.Y. Feb. 8, 2019) (granting summary judgment to defendants where "[p]laintiff offer[ed] no evidence that any particular officer thwarted his attempts to file his grievance or appeal").

Accordingly, upon *de novo* review, the Court accepts Magistrate Judge Danck's credibility determinations. Having reviewed the remainder of the Report-Recommendation for clear error and found none, the Court adopts the Report and Recommendation in its entirety.[6]

**IV.    CONCLUSION**

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation, Dkt. No. 161, is **ADOPTED in its entirety**; and the Court further

---

[6] On May 6, 2024, Plaintiff filed a Letter Motion requesting the appointment of new *pro bono* counsel. Dkt. No. 163. Because the Court finds that Plaintiff failed to exhaust his administrative remedies, the Court denies Plaintiff's Letter Motion as moot.

**ORDERS** that the Fourth Amended Complaint, Dkt. No. 83, is **DISMISSED in its entirety**; and the Court further

**ORDERS** that Plaintiff's Letter Motion, Dkt. No. 163, is **DENIED as moot**; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules, and close the case.

**IT IS SO ORDERED.**

Dated: June 7, 2024
      Albany, New York

Anne M. Nardacci
U.S. District Judge

11